**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**HI 40 CORPORATION, INC., d/b/a Physicians Weight Loss Centers, and William R. Pickett, Defendants.**

**Civil Action No. 93–0230–CV–W–BB.**

United States District Court,
W.D. Missouri,
Western Division.

Oct. 28, 1996.

Alleen S. VanBebber, U.S. Attorney's Office, Kansas City, MO, Gretchen D. Huston, S. Robert Royal, Robert G. Johnson, Trial Counsel, E.E.O.C., St. Louis, MO, for E.E.O.C.

Julia R. McKee, C. Brooks Wood, Trial Counsel, Hillix, Brewer, Hoffhaus, Whittaker & Wright, L.L.C., Kansas City, MO, for William R. Pickett, Hi 40 Corp., Inc.

## OPINION AND MEMORANDUM

MAUGHMER, Chief United States Magistrate Judge.

This is an action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq.,* where plaintiff Equal Employment Opportunity Commission (EEOC) alleges that defendants Hi 40 Corporation d/b/a Physicians Weight Loss Centers (Physicians Weight Loss) and William R. Pickett (Pickett) violated the Act by refusing to hire male applicants as counselors at defendants' weight loss centers because of their sex. The EEOC also alleges that defendants destroyed applications of male applicants in violation of the Act.

### FACTUAL BACKGROUND

Defendants admit that men were not considered for the position of counselor at Physicians Weight Loss centers and contend that being a woman is a bona fide occupational qualification for being a counselor with Physicians Weight Loss. The proceedings in this case were bifurcated so that all issues of liability could be resolved prior to any further proceedings, if necessary, concerning remedy.

The EEOC is an agency of the United States charged with the administration and enforcement of Title VII and is expressly authorized to bring this action by Section 706(f)(1) of Title VII, 42 U.S.C. Section 2000e–5(f)(1). Physicians Weight Loss is a Missouri corporation which owns and operates several weight loss centers in the Kansas City area that are engaged in the business of selling diet programs to customers to help them lose weight. These centers operate under a franchise agreement with Physicians Weight Loss Centers of America, Inc. Pickett is the owner and president of Physicians Weight Loss, the local franchisee.

Each center has its own customer base and staff. The customers of Physicians Weight Loss are approximately 95% women. Customers receive their counseling at the particular center of their choosing. Employees are generally hired for a particular center and do not rotate among the several centers. Each center is typically staffed by a manager,

nurse and counselor, although some variation of this combination may occur due to staffing levels. Since at least January 1, 1989, all of the employees of these centers have been female and of the 85 counselors Physicians Weight Loss has hired during this period, all have been women.

The manager of each center has overall supervisory and administrative responsibility. The primary function of the nurse is to perform some medical monitoring of customers, including the drawing of blood, the administration of shots and the updating of medical records. Although it may not be their primary function, both managers and nurses spend time counseling customers as the work load requires. This means that in the absence of a counselor or if a customer is not comfortable with a particular counselor, the nurse or manager may step in and perform the counseling function.

It is the primary function of counselors to perform the initial enrollment of customers and provide counseling services to them. The counseling duties include greeting existing and prospective customers, selling the weight loss program, providing instruction on the diet programs, counseling customers about weight, monitoring the progress of the customer, taking the measurements and weights of clients, and general office duties. The measurements of customers are taken in two ways. The first is by tape measure and the second is by caliper measurement.

Customers of Physicians Weight Loss typically go to their center every day for the first two weeks of the program. After that, the customer typically visits the center at least three times per week. At each of these visits, the customers are weighed and counseled. Body fat measurements with calipers are taken once every six weeks and this task takes about two minutes to perform. Tape measurements are taken once every two weeks and this task takes about five minutes to perform. Calipers are used to measure skin folds and thereby determine the customer's percentage of body fat. These measurements are taken at the back of the arm, on the back, and at the waist. Depending on the circumstances, including the counselor's practice and the customer's preference, the caliper measurements are sometimes taken on bare skin and sometimes through clothing. Tape measurements involve a physical touching of the customer and measurements at the neck, shoulders, bust, ribs, waist, hips, thigh, knee, calf and ankle are taken. If there is any objection or expression of discomfort by a customer concerning the taking of measurements by a counselor, it is the practice of the counselors to allow the customers to take the measurements themselves or simply forego the measurements.

The counseling sessions involve one-on-one counseling of customers where a wide range of issues and problems regarding the customer's weight loss are discussed. These include appropriate foods on a customer's food list, the ability of the customer to follow the food list, progress since the last visit, relationship and emotional problems which may affect weight loss, and physical problems which may affect weight loss. Both the measurement and counseling of customers takes place in small rooms with doors which are sometimes open and sometimes closed. Only the customer and counselor are present during these sessions.

The customers who attend Physicians Weight Loss centers are seeking help and guidance to lose weight. Often weight loss is a difficult endeavor for them and they need help and guidance to succeed. The customers may have failed in losing weight on their own and may suffer from low self-esteem. Embarrassment about their bodies and a reluctance to let others know their weight and measurements may also be experienced by the customers. Counselors at Physicians Weight Loss may serve as role models and motivators for customers. Often counselors have had their own personal weight loss experience and have faced the same challenges the customers face.

Some female customers of Physicians Weight Loss object to having their measurements, whether by tape or caliper, taken by a man and would not feel comfortable discussing emotional and physiological issues associated with weight loss with a man. These emotional and physiological issues may involve sexual relationships and physical issues uniquely related to women.

In the past, Physicians Weight Loss has had limited experience with two male weight loss counselors. The first was Pickett, the owner of Physicians Weight Loss, who has performed counselor services from time to time during the existence of Physicians Weight Loss. The second was a man who served as a counselor in 1988. This male counselor was terminated after only a few weeks of work. In the opinion of Pickett, both of these experiences proved unsuccessful because women customers would not accept counseling services from him or the other male counselor. Over the last several years, Physicians Weight Loss has received employment applications from several men seeking to be counselors. Some of the applications have been destroyed, thrown away or, in the very least, not maintained in the business records of Physicians Weight Loss for one year after they were received.

Other commercial weight loss programs which compete with Physicians Weight Loss centers, such as Weight Watchers Personal and Jenny Craig, do not have policies which prohibit the hiring of male counselors.. Similarly, many physical fitness centers, such as Gold's Gym and Bally's, do not have policies which prohibit the hiring of male counselors and trainers.

### DISCUSSION

### BONA FIDE OCCUPATIONAL QUALIFICATION

The Court begins its analysis by assuming that customers of Physicians Weight Loss have a constitutional right to privacy. This case presents two issues critical to its resolution. The first is whether hiring male counselors unduly infringes upon the privacy rights of customers at Physicians Weight Loss. The second is whether gender is a bona fide occupational qualification for counselors at Physicians Weight Loss.

 In addressing the first issue, the Court must balance the restriction on employment against the impact on individual privacy. If the employment practice "visits minimal intrusion on legitimate expectations of other employees," then the issue of bona fide occupational qualification need not be

reached. *Tharp v. Iowa Department of Corrections,* 68 F.3d 223 (8th Cir.1995); *See also, Johnson v. Transportation Agency,* 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987); *Turner v. Safley,* 482 U.S. 78, 88–91, 107 S.Ct. 2254, 2261–63, 96 L.Ed.2d 64 (1987), *Timm v. Gunter,* 917 F.2d 1093 (8th Cir.1990) (Application of balancing test). A minimal intrusion on the privacy of customers must be tolerated if the elimination of that intrusion "tramples" the employment opportunities of male weight loss counselors. *Tharp v. Iowa Department of Corrections,* 68 F.3d 223, 1995 WL 600883 at *2. In this case, the Court finds that the intrusion on the privacy interests of customers of Physicians Weight Loss that is occasioned by the presence of male counselors is minimal. The real privacy interests of the customers only extend to the intrusions created by the physical measurements which the counselors take. The Court does not accept the proposition that Physicians Weight Loss customers have a privacy interest that extends to the counseling function. The intrusion on customer privacy caused by the taking of measurements is minimal. The measurements, even when taken by female counselors, are often taken through clothing. Additionally, even when female counselors are taking the measurements, if they are to be taken in an area or in a way that makes the customer uncomfortable, the female counselors either allow the customer to take her own measurements or simply forego the measurement. The taking of measurements by male counselors under these circumstances constitutes only minimal intrusion on any privacy interests of customers.

On the other hand, the employment restriction utilized by Physicians Weight Loss, namely the refusal to hire male counselors, has a dramatic impact on the employment opportunity of male applicants. This policy completely eliminates an employment opportunity for male applicants. Applying a balancing analysis under these circumstances, the Court concludes that the impact of male counselors on the privacy interests of customers is minimal, while the impact of a policy that prohibits the hiring of male counselors has a substantial impact on the em-

ployment opportunities of male applicants. As a result, the privacy interests of customers cannot be used to justify a policy of not hiring male counselors because the minimal impact of male counselors on the privacy interests of customers is outweighed by the substantial impact on the employment opportunities of male applicants.

■ Next is the issue of whether being female is a bona fide occupational qualification for being employed as a counselor for Physicians Weight Loss. The Court concludes it is not. The concept of bona fide occupational qualification is a statutory defense provided by Title VII. 42 U.S.C. Section 2000e–2(e). It provides, in relevant part:

> Notwithstanding any other provision of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees, ... on the basis of his religion, sex, or national origin in those certain instances where religion, sex or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise.

■ The bona fide occupational qualification exception is " 'an extremely narrow exception to the general prohibition of discrimination on the basis of sex.' " *Gunther v. Iowa State Men's Reformatory*, 612 F.2d 1079, 1085 (8th Cir.), *cert. denied*, 446 U.S. 966, 100 S.Ct. 2942, 64 L.Ed.2d 825 (1980) (*quoting Dothard v. Rawlinson*, 433 U.S. 321, 334, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977).) Like any other defense, the burden is on Physicians Weight Loss to establish that being female is a bona fide occupational qualification for its counselors.

In order to show that a particular employment practice is a bona fide occupational qualification the employment practice must be reasonably necessary to the normal operation of that particular business. In making this determination, courts have looked to a variety of factors. Included among these factors are whether the essence of the business operation would be undermined without the challenged employment practice, *Dothard v. Rawlinson*, 433 U.S. at 333, 97 S.Ct. at 2728–29, whether safe and efficient perfor-

mance of the job would be possible without the challenged employment practice, *id.*, and whether the challenged employment practice has a " 'manifest relationship to the employment in question,' " *Gunther v. Iowa State Men's Reformatory*, 612 F.2d at 1086.

In this case, there are two arguments that Physicians Weight Loss advances in support of its argument that being female is a bona fide occupational qualification for its counselors. The first is that the privacy interests of its customers require that they be seen by female counselors. This is because the physical measurements that are taken by the counselors and the topics that are discussed during the counseling sessions are so inherently intrusive that these functions can only be performed by female counselors. The Court has already determined that the impact of employing male counselors on the privacy interests of the customers is minimal. Further, Physicians Weight Loss has not shown that employing male counselors would undermine the essence of the business, which is helping people lose weight. There has been no showing that the ability to accurately take measurements of customers and counsel them on the best ways to lose weight are talents uniquely possessed by women. Likewise, it has not been demonstrated that employing male counselors would pose any safety risk to customers or make the taking of measurements and counseling of customers unduly inefficient. Physicians Weight Loss has also failed to show that being female has a manifest relationship to the accurate taking of measurements or the proper counseling of customers interested in weight loss. To the extent Physicians Weight Loss offered any evidence in this area, it is simply unpersuasive.

■ The second reason Physicians Weight Loss asserts that makes being female a bona fide occupational qualification of its counselors is the preference of its customers, most of whom are women, for women counselors. First, preferences by customers have little, if any, legitimate role in making determinations of the legitimacy of discrimination under Title VII. *Bradley v. Pizzaco of Nebraska, Inc.*, 7 F.3d 795, 799 (8th Cir.1993). For example,

it is doubtful that the preference of male airline travelers would justify a requirement by airlines that all of its flight attendants be female. Second, even if customer preference was a legitimate factor to consider, the evidence of customer preferences presented by Physicians Weight Loss was neither scientifically tested nor sound. The customer preference evidence was based on a survey that was biased in its presentation and, as a result, did not yield reliable information.

## RECORD KEEPING

■ Regulations promulgated pursuant to Title VII impose certain record keeping requirements on employers. *See* 42 U.S.C. Section 2000e–8(c). Specifically, 29 C.F.R. Section 1602.14 requires:

> Any personnel or employment record made or kept by an employer (including but not necessarily limited to ... application forms submitted by applicants ... ) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later....

The evidence presented at trial, largely uncontested by Physicians Weight Loss, establishes that the employment applications of some male applicants were either destroyed or discarded within one year after being received by Physicians Weight Loss. Under either circumstance, the evidence establishes that employment applications of some male applicants were not maintained as required by 29 C.F.R. Section 1602.14.

For these reasons, it is

ORDERED that judgment be entered on the issue of liability in favor of the Equal Employment Opportunity Commission and against Hi 40 Corporation d b a Physicians Weight Loss Centers and William R. Pickett.