Ray H. THARP; Robert B. Morck, Plaintiffs–Appellants,

v.

IOWA DEPARTMENT OF CORRECTIONS; State of Iowa, Defendants–Appellees.

No. 94–3992.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1995.

Decided Oct. 13, 1995.

Rehearing Denied Nov. 15, 1995.

Michael Stowers, Des Moines, Iowa, argued (Anthony F. Renzo, on the brief), for appellant.

Layne M. Lindebak, Assistant Attorney General, Special Litigation Division, Des Moines, Iowa, for appellee.

Before McMILLIAN and LOKEN, Circuit Judges, and VAN SICKLE,* District Judge.

LOKEN, Circuit Judge.

The Iowa Department of Corrections ("IDC") instituted shift changes so that only female Residential Advisors ("RAs") would staff the women's unit of a mixed-gender minimum security prison. Two male RAs, Ray H. Tharp and Robert B. Morck, filed this action alleging that the gender-based shift assignments violate Title VII and the Iowa Civil Rights Act. The district court[1] granted summary judgment for IDC because plaintiffs were not harmed by this minimal restriction. Plaintiffs appeal. We affirm.

* The HONORABLE BRUCE M. VAN SICKLE, United States District Judge for the District of North Dakota, sitting by designation.

I.

The Fort Des Moines Residential Facility (the "Facility") is a minimum security prison housing "OWI" offenders, inmates on probation, and parole violators. The Facility consists of three residential units, an OWI unit and a men's unit, which house only male inmates, and a women's unit. RAs are the Facility's security staff. Among other duties, they conduct room searches, urinalysis tests, and strip and pat-down searches of residents and visitors. Personal searches are frequent at the Facility, because the inmates have substantial outside contacts and many have a history of substance abuse. The Facility requires that RAs of the same sex conduct "face-to-face" urinalyses and personal searches; plaintiffs do not challenge that policy.

The shift changes in question were implemented on November 25, 1987. At that time, the Facility employed eleven male and six female RAs. Under the prior shift assignment policy, at times no female RA was available to conduct same-sex searches or urinalyses of female residents in the women's unit. Other, less trained female staff would then perform these functions. To remedy this problem, and to provide more positive role models for the female inmates, the Facility adopted the policy that only female RAs would be assigned to the women's unit. Under this new policy, there were four shifts open only to female RAs and twelve shifts open to both male and female RAs.

Plaintiffs Tharp and Morck were the two RAs with the greatest job seniority. After the policy change, they bid on women's unit shifts, but the assignments went to women RAs with less seniority. Plaintiffs' union then filed a grievance. The Fifth Judicial District Department of Correctional Services denied the grievance on the ground that "the practice of requiring a woman staff to be directly assigned to a women's unit is accepted practice.... The issue is one of operational efficiency."

1. The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

Morck was promoted to probation and parole officer in May 1989. Tharp was promoted to probation and parole officer in November 1992. Though the RA shift assignment issue no longer affected their work, plaintiffs filed this action in April 1993, alleging that they were denied assignment to more desirable, female-only shifts to which they were entitled by reason of their seniority, and seeking damages because the November 1987 scheduling policy discriminated against them on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Iowa Civil Rights Act, Iowa Code chapter 216.

The district court granted summary judgment to IDC. Because the shift assignment policy was adopted to meet legitimate penological concerns, and because plaintiffs had many different shift assignments and promotions available to them, the court concluded that the policy is a minimal restriction that "did not deprive [plaintiffs] of employment opportunities or otherwise adversely affect their employment status."[2]

## II.

On appeal, plaintiffs argue they were denied preferred shift assignments because of a gender-based change in policy, and that proves a violation of Title VII and the Iowa Civil Rights Act unless IDC can prove that the policy is a bona fide occupational qualification, an issue not appropriate for summary judgment.[3] We disagree.

A job assignment issue of this type impacts the prison employer's penological interests, the prison employees' employment interests, and the prison inmates' privacy interests. The language of Title VII suggests that the congressional policy against gender-based discrimination in employment may not be balanced against these other, often-competing interests, absent proof of the b.f.o.q. defense. The statute provides that an employer may not

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment [or] classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status.

42 U.S.C. § 2000e–2(a).

However, in *Johnson v. Transportation Agency,* 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987), a divided Supreme Court reaffirmed that, despite the statute's seemingly blanket prohibition, an affirmative action plan adopted by a public employer to remedy a manifest imbalance in traditionally segregated job categories will be upheld, without the necessity of a b.f.o.q. analysis, if it "visits minimal intrusion on the legitimate expectations of other employees." *Id.* at 640, 107 S.Ct. at 1455. Justice Stevens, concurring, expressed the view that this principle is not limited to affirmative action plans; that is, *Johnson* "does not establish the permissible outer limits of voluntary programs undertaken by employers to benefit disadvantaged groups." *Id.* at 642, 107 S.Ct. at 1457. Justice O'Connor, also concurring separately, opined that "the proper initial inquiry in evaluating the legality of an affirmative action plan by a public employer under Title VII is no different from that required by the Equal Protection Clause." *Id.* at 649, 107 S.Ct. at 1460.

This court applied a similar balancing analysis to prison job assignment issues in *Timm v. Gunter,* 917 F.2d 1093 (8th Cir.1990), *cert.*

**2.** The court noted that plaintiffs' claim would also be subject to a Title VII affirmative defense if assigning female RAs to the women's unit is a "bona fide occupational qualification." *See* 42 U.S.C. § 2000e–2(e). In *Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977), the Supreme Court held that being male was a b.f.o.q. for the job of correctional counselor at an Alabama male maximum-security penitentiary. Justice Marshall dissented from the decision to exclude women from these jobs but commented, "it may well be possible, once a constitutionally adequate staff is available, to re-

arrange work assignments so that legitimate inmate privacy concerns are respected without denying jobs to women." 433 U.S. at 347. Like the district court, we do not reach the b.f.o.q. issue.

**3.** Plaintiffs accept the district court's conclusion that the analysis under the Iowa Civil Rights Act is the same as that under Title VII. *See King v. Iowa Civil Rights Comm'n,* 334 N.W.2d 598, 601 (Iowa 1983).

*denied,* 501 U.S. 1209, 111 S.Ct. 2807, 115 L.Ed.2d 979 (1991). In *Timm,* prisoners at an all-male prison challenged, as violative of their Eighth Amendment privacy rights, prison policies that allowed female guards to conduct pat searches and to view inmates in the showers. Applying the deferential balancing test of *Turner v. Safley,* 482 U.S. 78, 88–91, 107 S.Ct. 2254, 2261–2262, 96 L.Ed.2d 64 (1987), we rejected these § 1983 claims, deferring to the prison administrators' professional judgment that the practices at issue were essential to prison security, involved minimal or at least tolerable intrusions on the male inmates' privacy, and could not be eliminated without trampling female guards' employment opportunities or incurring unreasonable costs. 917 F.2d at 1099–1102. *Accord Grummett v. Rushen,* 779 F.2d 491, 492 (9th Cir.1985); *Smith v. Fairman,* 678 F.2d 52, 55 (7th Cir.1982), *cert. denied,* 461 U.S. 907, 103 S.Ct. 1879, 76 L.Ed.2d 810 (1983).

Though *Timm* was primarily an inmate § 1983 case, the female prison guards filed a counterclaim alleging that a policy requiring that only male guards work in the highest security unit (Unit 5) violated Title VII. We held that "the Unit 5 staffing restriction does not violate Title VII" because "a minimal restriction such as the Unit 5 gender-based staffing restriction does not deprive female employees of any employment opportunities." 917 F.2d at 1102 n. 13.

■■■ The policy of assigning female RAs to the Facility's women's unit addresses female inmate privacy concerns, improves the Facility's rehabilitative services to female inmates, *and* advances the interests of female employees. Although the five opinions in *Johnson* expressed widely divergent Title VII views, we believe that a majority of the Court in *Johnson* approved the Title VII balancing analysis we conducted in *Timm v. Gunter*—that is, a prison employer's reasonable gender-based job assignment policy, particularly a policy that is favorable to the protected class of women employees, will be upheld if it imposes only a "minimal restriction" on other employees.[4]

Applying the balancing analysis of *Johnson* and *Timm,* we conclude after *de novo* review of the parties' Statement of Undisputed Facts that the district court properly granted summary judgment to IDC in this case. There is no question that IDC implemented the policy to further legitimate penological and privacy concerns. On the other side of the balance scale, even if the RAs' shift assignments are a "privilege[ ] of employment" within the meaning of 42 U.S.C. § 2000e–2(a), the undisputed facts demonstrate that the policy of same-sex assignments to the Facility's women's unit was a "minimal restriction" on plaintiffs' employment. Plaintiffs concede that they did not suffer termination, demotion, or reduction of pay. Their promotion opportunities were unaffected, and they were both later promoted to parole and probation officer positions. Thus, unlike the denial of promotions in *Gunther,* the Facility's scheduling policy did not reduce the male RAs' pay or promotion opportunities. Instead, the Facility furthered the female inmates' privacy and rehabilitation interests by reassigning RAs in a manner even *less* restrictive than that upheld in *Timm.* From the standpoint of impact on plaintiffs, this case is very much like *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir.1994), where we affirmed summary judgment dismissing plaintiff's Title VII claim because plaintiff's reassignment to a different secretarial position was not an adverse employment action even though the new position involved "fewer secretarial duties and was more stressful in that she had to watch the door, listen for the fax, and be in charge of security for people coming in and out of the area."

In addition, we note that plaintiffs have not established they had a right to shift assign-

---

4. In the pre-*Johnson* case of *Gunther v. Iowa State Men's Reformatory,* 612 F.2d 1079, 1087 (8th Cir.), *cert. denied,* 446 U.S. 966, 100 S.Ct. 2942, 64 L.Ed.2d 825 (1980), we held that a policy forbidding promotion of women to the "Correctional Officer II" classification violated Title VII but noted that the statute would permit a "proper classification narrowly drawn" to protect inmates' privacy through same-sex job assignments. Though *Gunther* limited this balancing analysis to the b.f.o.q. defense, *Johnson* and *Timm* teach that a minimal restriction promoting penological interests, inmate privacy, *and* the employment opportunities of a protected class does not violate Title VII.

ments of their choice. In essence, they claim the collective bargaining agreement granted them Facility-wide job seniority that governed shift assignments. However, the adverse grievance decision is strong, unrefuted evidence to the contrary. Although the absence of a right to a particular job assignment would not excuse employer gender discrimination in other contexts, it confirms that we deal here with a minimal restriction. If plaintiffs' union believes that IDC has given too much weight to concerns of inmate privacy and rehabilitation, or to the employment opportunities of female RAs, these issues presumably remain mandatory subjects of future collective bargaining.

The judgment of the district court is affirmed.