145 F.3d 1109
 76 Fair Empl.Prac.Cas. (BNA) 1793,
73 Empl. Prac. Dec. P 45,444,
98 Cal. Daily Op. Serv. 4218,
98 Daily Journal D.A.R. 5813
Allan M. ROBINO; David J. MacKay; Harold Ching; Thomas A.
Goodman, Plaintiffs-Appellants,
v.
George IRANON, Director of the Department of Public Safety
and Women's Community Correctional Center; State of Hawaii;
Theodore Sakai, Director of the Department of Public Safety
and Women's Community Correctional Center, Defendants-Appellees.
 No. 97-16470.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 5, 1998.
Decided June 3, 1998.
 
 Michael G.M. Ostendorp, Honolulu, Hawaii, for plaintiffs-appellants.
 Gordon M. Bronson and Dale Bennett, Honolulu, Hawaii, for plaintiff-appellant.
 Gary Hynds, Deputy Attorney General, Honolulu, Hawaii, for defendants-appellees.
 Appeal from the United States District Court for the District of Hawaii; Samuel P. King, Senior District Judge, Presiding. D.C. No. CV-96-00486.
 Before: BROWNING, BRUNETTI, and RYMER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Allan Robino and three other male Adult Corrections Officers ("ACOs") at the Women's Community Correctional Center ("WCCC") on the Island of Oahu appeal the district court's summary judgment for the Director of the WCCC and the State of Hawaii. We review the district court's decision de novo, and affirm. See Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 834 (9th Cir.1997).
 
 I.
 
 2
 The ACOs filed a sexual discrimination action, pursuant to Title VII, based on the WCCC's policy of assigning only female ACOs to six posts each of which included a First Watch position. The district court found that gender was a bona fide occupational qualification ("BFOQ") reasonably necessary to accommodate the privacy interests of the female inmates and reduce the risk of sexual conduct between ACOs and inmates. See 42 U.S.C.2000e-2(e)(1).
 
 
 3
 After a study conducted by a specially appointed task force in compliance with an EEOC settlement agreement, prison officials authorized by the Department of Personnel Services determined that the best policy to protect female inmates and to prevent allegations of sexual misconduct was to designate six posts as female-only. This professional judgment is entitled to deference. See Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (prison administrators must be allowed "to adopt innovative solutions to the intractable problems of prison administration"); Torres v. Wisconsin Dep't. of Health & Social Serv., 859 F.2d 1523, 1532 (7th Cir.1988) (en banc) (the judgments of penal administrators is "entitled to substantial weight when they are the product of a reasoned decision-making process, based on available information and experience").
 
 
 4
 The policy limits eligibility for such a small number of positions (six out of forty-one) that it imposes such a de minimus restriction on the male ACOs' employment opportunities that it is unnecessary to decide whether gender is a BFOQ for the few positions affected. See e.g. Tharp v. Iowa Dep't of Corrections, 68 F.3d 223, 226 (8th Cir.1995)(en banc), cert. denied 517 U.S. 1135, 116 S.Ct. 1420, 134 L.Ed.2d 545 (1996)(exclusion of male officers from female-only shifts constituted such a "minimal intrusion" on their employment that the court need not reach the BFOQ issue to uphold the policy). In such circumstances, "[t]he conflict between the right of one sex not to be discriminated against in job opportunities and the other to maintain some level of privacy has normally been resolved by attempting to accommodate both interests through adjustments in scheduling and job responsibilities for the guards." Jordan v. Gardner, 986 F.2d 1521, 1527 (9th Cir.1993) (en banc) (internal quotation and citation omitted). The male ACOs have not suffered any tangible job detriment beyond a reduced ability to select their preferred watches.
 
 II.
 
 5
 Assuming arguendo that plaintiffs raise a colorable Title VII claim, however, we conclude that gender constitutes a BFOQ for the six posts at issue here. The plaintiffs argue that the BFOQ exception does not apply in cases involving discrimination in pay, but this case involves disparate treatment in post assignment. See EEOC v. Fremont Christian Sch., 781 F.2d 1362, 1364 (9th Cir.1986)(the BFOQ provision did not apply to the school's discriminatory provision of benefits, namely providing health insurance to heads of households defined as married men and single persons).
 
 
 6
 The plaintiffs further contend a BFOQ defense cannot be based on the privacy rights of the inmates and they correctly note that inmates' privacy rights are limited. See Somers v. Thurman, 109 F.3d 614, 620 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 143, 139 L.Ed.2d 90 (1997); Michenfelder v. Sumner, 860 F.2d 328, 334 (9th Cir.1988); Grummett v. Rushen, 779 F.2d 491, 495-96 (9th Cir.1985). However, a person's interest in not being viewed unclothed by members of the opposite sex survives incarceration. See Grummett v. Rushen, 779 F.2d 491, 494 (9th Cir.1985). Whether or not the inmates could successfully assert their own right to privacy is immaterial to this case. We are concerned here with a considered prison policy that takes into account security, rehabilitation, and morale.
 
 
 7
 The Seventh Circuit has upheld a similar BFOQ in the face of a Title VII challenge on the grounds of inmate privacy and rehabilitation. See Torres v. Wisc. Dep't of Health & Social Serv., 859 F.2d 1523, 1530 (7th Cir.1988) (en banc) The Torres court held that "the superintendent ... made a professional judgment that giving women prisoners a living environment free from the presence of males in a position of authority was necessary to foster the goal of rehabilitation" especially in light of the warden's finding that "a high percentage of female inmates has been physically and sexually abused by males." Id.
 
 
 8
 The record amply supports the claimed BFOQ. WCCC adopted its current policy of assigning only female ACOs to posts that raise inmate privacy or safety concerns based on the serious allegations and the ensuing problems with morale among both the inmates and the ACOs. To comply with an EEOC settlement, it conducted an extensive survey of post duties before determining which posts should be designated female-only. Each designated female-only post is residential and requires the ACO on duty to observe the inmates in the showers and toilet areas for the prison's own security or provides unsupervised access to the inmates. The state's legitimate penological interests outweigh whatever interest the male ACOs may have in standing the watches of their choice. Viewing the evidence in the light most favorable to the plaintiffs, the defendants have met their burden of demonstrating that their policy is reasonably necessary to the operation of the WCCC. The defendants have established these six female-only posts are a reasonable response to the concerns about inmate privacy and allegations of abuse by male ACOs.
 
 
 9
 AFFIRMED.