# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2553

_____

|                               |   |                              |
|-------------------------------|---|------------------------------|
|                               | * |                              |
| Deana Tipler,                 | * |                              |
|                               | * |                              |
| Plaintiff – Appellant,        | * |                              |
|                               | * | Appeal from the United States |
| v.                            | * | District Court for the       |
|                               | * | District of Nebraska.        |
| Douglas County, Nebraska;     | * |                              |
| Robert Houston, Director of   | * |                              |
| Douglas County Corrections,   | * |                              |
|                               | * |                              |
| Defendants – Appellees.       | * |                              |
|                               | * |                              |
|                               | * |                              |

_____

Submitted: December 14, 2006
Filed: April 12, 2007

_____

Before BYE, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Deanna N. Tipler sued Robert P. Houston and Douglas County, Nebraska, alleging gender discrimination under 42 U.S.C. § 1983 and Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e-2.  The district court[1] granted the defendants summary judgment.  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Tipler, a female, began working as a correctional officer I at the County correctional center in September 2002.  She worked the B shift.  There were three shifts: the A shift (11:00 p.m. to 7:00 a.m.), B shift (7:00 a.m. to 3:00 p.m.), and C shift (3:00 p.m. to 11:00p.m.).  Twice a year, employees submit their first and second choices for the next six months.

A shift-bid was held, effective for July 2003.  Tipler requested the B shift first, and the A shift second.  Based solely on seniority, Tipler would have continued on the B shift.  The bid results, however, did not produce the minimum number of female officers to supervise the female inmates.  As a result, Tipler and eight other officers (four females and four males) were reassigned.

The five least senior females on the B shift (including Tipler) were moved to the A or C shift.  Tipler ended up with her second choice, the A shift.  The four least senior males were reassigned from the A shift to the B or C shift. Three of the four males had greater seniority than Tipler.

Tipler worked the A shift for three months.  She claims the shift change caused her to suffer headaches, work more overtime, spend less time with her children, and pay increased medical and childcare costs.

---

[1]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska, to whom the case was referred for decision by consent of the parties pursuant to 28 U.S.C. § 636(c).

In September 2003, due to the hiring of more female officers, Tipler was moved to her first choice, the B shift. She received her first choice for each shift afterwards. She was promoted to corrections officer II in May 2005.

Tipler sued the County (and its corrections director Houston in his official capacity) alleging gender discrimination based on the County's "facially discriminatory staffing policies." The district court found that the County had a reasonable gender-based job assignment policy, and that Tipler "failed to establish any right to a particular shift assignment or that the assignment resulted in more than a minimum restriction on her employment." The court granted the County summary judgment.

## II.

This court reviews de novo the grant of summary judgment, viewing the record most favorably to the non-moving party. *See McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1135 (8th Cir. 2006); *Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 619 (8th Cir. 2006). Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. P. 56(c)**; *Knowles v. Citicorp Mortgage, Inc.*, 142 F.3d 1082, 1085 (8th Cir. 1998).

## A.

"Title VII has made an employer's discrimination against an employee on the basis of sex an unlawful employment practice." *Jenson v. Eveleth Taconite Co.,* 130 F.3d 1287, 1301 n.20 (8th Cir. 1997); **42 U.S.C. § 2000e-2(a)**. The County "acknowledges that Appellant's gender was a factor in moving her to a different shift." An employer may treat employees differently based on gender when it is "a bona fide

occupational qualification reasonably necessary to the normal operation of that particular business." *See* **42 U.S.C. § 2000e-2(e)**.

Where the employer is a prison, a bona fide occupational qualification analysis is unnecessary if (1) the policy requiring female-only supervision of female inmates is reasonable, and (2) such a policy imposes only a "minimal restriction" on the employee. *See **Tharp v. Iowa Dep't of Corrections,*** 68 F.3d 223, 225, 226, 227 (8th Cir. 1995), *cert. denied*, 517 U.S. 1135 (1996); ***Robino v. Iranon,*** 145 F.3d 1109, 1110 (9th Cir. 1998) ("The policy limits eligibility for such a small number of positions (six out of forty-one) that it imposes such a *de minimus* restriction on the male [correctional officers'] employment opportunities that it is unnecessary to decide whether gender is a BFOQ for the few positions affected").

This case is controlled by *Tharp.* There, the prison adopted a policy assigning only women guards to the female unit. Two males, with the greatest job seniority, bid to work the female unit. They lost to women guards with less seniority. The men sued, arguing the gender-based policy violated Title VII. This court found that the gender-based policy was reasonable: it "addresses female inmate privacy concerns, improves the Facility's rehabilitative services to female inmates, *and* advances the interests of female employees." ***Tharp,*** 68 F.3d at 226. This court next determined that "the policy of same-sex assignments to the Facility's women's unit was a minimal restriction on plaintiffs' employment." ***Id***. This court, balancing the reasonableness of the policy against the restriction on employment, held that there was no violation of Title VII. ***Id.***[2]

---

[2]Tipler argues that *Tharp* does not control her case because *Tharp* approves only policies that are "favorable to the protected class of women employees." The *Tharp* case is not so limited, as demonstrated by its reliance on *Timm v. Gunter*, 917 F.2d 1093 (8th Cir. 1990), which rejected the female guards' claim that a gender-based assignment policy violated Title VII.

In this case, the reassignment policy is reasonable. Nebraska Revised Statute § 47-111 provides: "In every county jail where there is a female prisoner, twenty-four-hour supervision shall be provided by a matron appointed by the county board, whose duty it shall be to have entire charge of the female prisoners." Nebraska law establishes the Jail Standards Board, which has adopted "Minimum Jail Standards for Adult Jail Facilities, Title 81 Regulations," which include in chapter 2:

> 004.02A  Female employees shall provide around-the-clock supervision of all female inmates housed in a jail facility.
>
> 004.02B  The facility administrator shall insure that inmates are viewed personally by facility employees often enough to maintain their safekeeping, but in no event less than one time per hour and document it.

Jail standard 006.01C requires that all body cavity, pat, and strip searches shall be conducted by employees of the same sex as the inmate. The County, in its care, lodging, safekeeping and security of male and female inmates, must comply with the jail standards.

A collective bargaining agreement between the County and the Fraternal Order of Police covers the correctional officers' employment. By the agreement, shift assignments are controlled by seniority, "except where Nebraska State law and the Nebraska jail standards dictate the staffing of female officers." The agreement grants the County the right to adjust shift schedules if the shift-bid process does not produce enough females to supervise women inmates.

Tipler contends that the County's policy is not reasonable, claiming its interpretation of state law is "unnecessarily strict" and "inconsistently applied." She emphasizes that before January 2003, the County allowed male guards briefly to relieve female officers (for personal breaks). The County temporarily ended this

practice, adopting a new policy: "The practice of allowing male officers to provide breaks to female officers working female modules must end immediately. No male officers will be allowed to supervise female inmates, even for short periods of time." On September 7, director Houston, based on female dissatisfaction with the new policy, inquired whether male guards could relieve female officers for ten-minute breaks. On October 22, a deputy county attorney advised: "Although current jail standards require that female inmates be supervised by female officers around the clock, we do not believe that male coverage during the female officers' personal hygiene breaks constitutes a lack of female supervision." The County then re-instituted the practice of allowing male officers to cover female guards' breaks.

Tipler shows at most a fine-tuning of the gender-based policy, not a complete change of policy. Such a fine-tuning is well within the discretion of prison administrators, to which the courts defer. *See* ***Turner v. Safley,*** 482 U.S. 78, 85 (1987) ("Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities"); ***Thomas v. Gunter,*** 32 F.3d 1258, 1259 (8th Cir. 1994) ("judgments regarding prison security 'are peculiarly within the province and professional expertise of corrections officials, and . . . courts should ordinarily defer to their expert judgment in such matters'"), *quoting* ***Pell v. Procunier,*** 417 U.S. 817, 827 (1974). The County's reassignment policy is reasonable. *See* ***Tharp,*** 68 F.3d at 226, *citing* ***Turner,*** 482 U.S. at 88-91.

The second inquiry is the extent of the restriction on Tipler's employment. On this record, she was not denied any significant employment opportunities. *See* ***Timm v. Gunter,*** 917 F.2d 1093, 1102 n.13 (8th Cir. 1990), *cert. denied*, 501 U.S. 1209 (1991) (a "staffing restriction does not violate Title VII" because "a minimal restriction such as the Unit 5 gender-based staffing restriction does not deprive female employees of any employment opportunities"). After working the A shift for three

months, Tipler moved back to the B shift, and received her first choice for each shift afterwards. Her assertion that the "shift change was accompanied by a loss of training opportunities which affected [her] ability to be promoted" is not supported by the record. In fact, she was later promoted to correctional officer II. *See **Tharp,*** 68 F.3d at 226 (policy of same-sex assignments to women's unit was a "minimal restriction" when plaintiffs "promotion opportunities were unaffected, and they were both later promoted to parole and probation officer positions"). Tipler showed only that her reassignment caused her some personal inconvenience and expense. Any restriction on Tipler's employment was minimal.

Balancing the County's reasonable reassignment policy with the minimal restriction on Tipler's employment, the district court properly granted summary judgment on her Title VII claim.

### B.

Tipler next asserts gender discrimination under the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. The analysis is similar when a plaintiff alleges both Title VII and § 1983 claims based on a violation of equal protection. *See **Briggs v. Anderson,*** 796 F.2d 1009, 1021 (8th Cir. 1986) (analysis under Title VII and § 1983 is essentially the same); ***Craik v. Minn. State Univ. Bd.,*** 731 F.2d 465, 468 n.5 (8th Cir. 1984) ("The issue of discriminatory intent is common to analyses under the Fourteenth Amendment, § 1983, and Title VII"); ***Hicks v. St. Mary's Honor Ctr.,*** 970 F.2d 487, 490-91 (8th Cir. 1992), *rev'd on other grounds*, 509 U.S. 502, 506 n.1 (1993) ("We agree with the district court that the elements of plaintiff's [§ 1983] discrimination claim against Long are the same as those which he must prove against St. Mary's under Title VII").

To establish a violation of § 1983, the plaintiff must show the deprivation was (1) a right secured by the Constitution and laws of the United States, and (2) caused

by a person or persons acting under the color of state law. *See id.*; *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978); *Creason v. City of Wash.,* 435 F.3d 820, 823 (8th Cir. 2006). "Prison authorities are clearly persons acting under color of state law." *Thomas v. Gunter,* 32 F.3d 1258, 1259 (8th Cir. 1994).

Tipler's right to be free from gender discrimination is secured by the equal protection clause of the Fourteenth Amendment. *See United States v. Virginia,* 518 U.S. 515, 532 (1996) ("the Court has repeatedly recognized that neither federal nor state government acts compatibly with the equal protection principle when a law or official policy denies to women, simply because they are women, full citizenship stature – equal opportunity to aspire, achieve, participate in and contribute to society based on their individual talents and capacities").

When the state makes a classification based on gender, "the reviewing court must determine whether the proffered justification is 'exceedingly persuasive.'" *Id.* at 533. The state "must show at least that the challenged classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Id.* (internal quotations omitted); *Ways v. City of Lincoln,* 331 F.3d 596, 600 (8th Cir. 2003) ("the state must persuasively show that certain gender-based classifications serve important governmental objectives and that the statute in question is substantially related to the achievement of those objectives").

In this case, the County has an important governmental objective: to implement state law, the jail standards, the union agreement, and proper prison administration as determined by corrections officials. The County must obey these rules, or risk penalties, including closure of its jail. Tipler does not attack the constitutional validity of the relevant laws, which she says are "not an issue before the Court."

The County employed means that were substantially related to achieving important government objectives. The County reassigned Tipler in accordance with the union agreement, by inverse seniority only after the shift-bid process did not yield enough female officers to supervise the female inmates. Once sufficient female officers were hired, the County then returned Tipler to her first-choice shift.[3]

The district court properly granted summary judgment on Tipler's § 1983 claim.

## III.

The judgment of the district court is affirmed.

_____

---

[3] Tipler does not contend, and makes no showing, that a different policy on male officers covering breaks by female officers would have avoided her reassignment from the B shift to the A shift.