# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3433

_____

Gena Duckworth; Tamatha Fischer;          *
Sandra Delaney,                           *
                                          *
        Plaintiffs – Appellees,           *
                                          *
        v.                                *
                                          *
St. Louis Metropolitan Police             *
Department; Board of Police               *
Commissioners of the City of              *   Appeal from the United States
St. Louis,                                *   District Court for the Eastern
                                          *   District of Missouri.
        Defendants,                       *
                                          *
Bart Saracino; Michael J. Quinn;          *
Francis G. Slay, ex officio, as Members   *
of the Board of Police Commissioners;     *
Chief Joseph Mokwa; Roy                   *
Joachimstaler, Major; Antoinette Filla,   *
Captain, in their individual and official *
capacities; Jo Ann Freeman Morrow,        *
Member of the Board of Police             *
Commissioners; Chris Goodson,             *
Member of the Board of Police             *
Commissioners,                            *
                                          *
        Defendants – Appellants.          *

_____

Submitted: April 10, 2007
Filed: July 19, 2007

_____

Before MURPHY, BRIGHT, and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

Three female officers sued their superiors for gender discrimination under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010-213.095. The district court denied the defense of qualified immunity to the police superiors. This court reverses and remands.

I.

After a transfer left no female officers on the night watch in District One, Captain Antoinette M. Filla asked if any female officers would work then. None volunteered. Four months later, Captain Filla assigned plaintiff Sandra Delaney to the night watch. Delaney was the least senior of the experienced female officers in the district. After working the night watch for two months, Delaney complained that her husband was called up for military duty and she had difficulty obtaining a babysitter.

On February 6, 2003, Captain Filla emailed all personnel: "I believe there is a definite need for female officers on the nightwatch." On the advice of Major Roy Joachimstaler – her immediate superior – she assigned the three plaintiffs (based on seniority) to work the night watch, initially rotating for 28-day periods.

On February 10, plaintiffs filed a grievance (emphasis in original):

> [We] believe it is unfair to order us based upon our gender, to rotate monthly on the night watch. This order is in violation of Rules Manual designated in Section 3.114 where it is mandated that police officers be permanently assigned to a platoon. This order is also in violation of Title VII of the Civil Rights Act 1964 wherein it is illegal to discriminate against employees in regards

-2-

to sex, when the policy is applied in terms of condition of employment including placement.

On February 14, Captain Filla explained her position in an intra-department report to the plaintiffs and her superiors (emphasis in original):

> I believe the assignment of females to all watches is imperative to the operation of any command, not just patrol operations. It is not only important that all watches in every command be as diverse as the population we serve, but also as diverse as the entire population of our police department. . . .
>
> The unique operations of law enforcement, also requires unique responsibilities by female and male officers, responsibilities which no other profession requires. We have to consider the safety of all personnel on the street when assigning our officers to crucial positions; for example, the searching of suspects at incident scenes.
>
> . . . .
>
> I currently have fifteen (15) female officers (6% of authorized strength) assigned to District One, with **none** assigned to the nightwatch. We felt it was important to have our females assigned strategically to cover several recreation brackets of **all** watches.

As authority, Captain Filla cited Special Order 90-S-7, which provides: "District commanders may reassign an officer from his/her assigned work schedule provided the commander has sufficient justification to do so." Her "resolution to this Grievance is to assign three (3) female officers [plaintiffs] to the nightwatch permanently, with one in each of the three precincts." Plaintiffs received a 10 percent pay increase while working the night watch.

On February 25, plaintiffs filed a second grievance claiming the permanent placement on the night watch was retaliation for their original grievance. Captain

-3-

Filla rejected the grievance: "Your assignment to the nightwatch was based on the District's needs and operations, not on personal issues."

On review, the Grievance Committee found that although the initial rotation violated Department policy, the violation was corrected by the permanent assignment. The Committee recommended the grievance be rejected. The Committee noted, however, that civil rights violations are outside the scope of the grievance procedure. Police Chief Joseph J. Mokwa agreed with the recommendation.

Chief Mokwa later testified that although "I don't think that necessarily every Captain would agree with her . . . this is Tony Filla's command, and she has the authority to make those decisions for her command." Major Joachimstaler acknowledged that "[t]here's laws against" race-based and gender-based personnel decisions, and that "[i]t's not a Chief's decision. It's a decision of district command [Captain Filla] to assign personnel." Major Joachimstaler also stated that some women should work nights because "that's the optimum for the optimum operation of the district . . . Not just nights, [but] on all watches."

Plaintiffs allege their superiors discriminated against them based on gender, and retaliated when they complained. The district court denied the defense of qualified immunity to the police superiors, who appeal.

II.

Plaintiffs first contend that this court lacks jurisdiction because "Appellants challenge only the factual findings of the district court." *See Bearden v. Lemon,* 475 F.3d 926, 930 (8th Cir. 2007), *quoting Johnson v. Jones,* 515 U.S. 304, 313 (1995) ("a question of evidence sufficiency, i.e., which facts a party may, or may not, be able to prove at trial . . . is not appealable"); *Thomas v. Talley,* 251 F.3d 743, 746 (8th Cir. 2001) ("we lack jurisdiction over this interlocutory appeal" because "Captain Talley is asking us to engage in the time-consuming task of reviewing a factual

-4-

controversy"). The parties agree, however, that the sole issue on appeal is whether the superiors are entitled to qualified immunity.[1] Whether qualified immunity applies is a legal issue. *See Bearden,* 475 F.3d at 930 ("In considering the immediate appeal from the denial of qualified immunity, the appealable issue is a purely legal one, whether the facts alleged . . . support a claim of violation of clearly established law"); *Moore v. Duffy,* 255 F.3d 543, 545 (8th Cir. 2001), *quoting Behrens v. Pelletier,* 516 U.S. 299, 313 (1996) ("summary judgment determinations *are* appealable when they resolve a dispute concerning an abstract issue of law relating to qualified immunity . . . typically, the issue whether the federal right allegedly infringed was clearly established"). This court has jurisdiction, and plaintiffs' motion to dismiss the appeal is denied.

III.

"This Court reviews the rejection of a qualified-immunity defense de novo." *Herts v. Smith,* 345 F.3d 581, 584 (8th Cir. 2003), *citing Burnham v. Ianni,* 119 F.3d 668, 673 (8th Cir. 1997) (en banc); *see also Pace v. City of Des Moines,* 201 F.3d 1050, 1052 (8th Cir. 2000) (same). This court ordinarily looks at the record in the light most favorable to the party opposing the motion, drawing all inferences most favorable to that party. *Burnham,* 119 F.3d at 673.

In determining whether qualified immunity applies, this court first must examine: "Taken in the light most favorable to the party asserting the injury, do the

---

[1] Plaintiffs' Title VII (and parallel state law) claims are not at issue on this appeal. *See Genas v. State of N.Y. Corr. Servs.,* 75 F.3d 825, 829-30 n.3 (2d Cir. 1996) ("the doctrine of qualified immunity is irrelevant to plaintiff's Title VII claims"); *Harvey v. Blake,* 913 F.2d 226, 228 (5th Cir. 1990) ("Because the doctrine of qualified immunity protects a public official from liability for money damages in her individual capacity only, the doctrine is inapplicable in the Title VII context"); *Wu v. Thomas,* 996 F.2d 271, 273 (11th Cir. 1993) ("Qualified immunity is no defense to a Title VII action").

facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *See Scott v. Harris,* 550 U.S. __ 127 S. Ct. 1769, 1774 (2007) *quoting Saucier v. Katz,* 533 U.S. 194, 201 (2001). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" *Id.*, *quoting Saucier,* 533 U.S. at 201; *see also Burnham,* 119 F.3d at 673.

## A.

Plaintiffs' "right to be free from gender discrimination is secured by the equal protection clause of the Fourteenth Amendment." *Tipler v. Douglas County, Neb.,* 482 F.3d 1023, 1027 (8th Cir. 2007); *Ottman v. City of Independence,* 341 F.3d 751, 756 (8th Cir. 2003) ("intentional gender discrimination in public employment by persons acting under color of state law violates the Equal Protection Clause of the Fourteenth Amendment"); *see United States v. Virginia,* 518 U.S. 515, 532 (1996). Intentional discrimination may be shown by direct or circumstantial evidence. *See Griffith v. City of Des Moines,* 387 F.3d 733, 736 (8th Cir. 2004).

Viewing the facts favorably to plaintiffs, there is direct evidence of gender discrimination. Captain Filla emailed all personnel: "I believe there is a definite need for female officers on the nightwatch." On the advice of Major Joachimstaler, she reassigned only females to work the night watch. Chief Mokwa directly participated in the reassignments by approving them. There was a specific link between their belief about "female officers" and the reassignments. Defendants admit: "It is true that Appellees' gender was the reason they were involuntarily assigned to the night watch." *See Kerns v. Capital Graphics, Inc.,* 178 F.3d 1011, 1017 (8th Cir. 1999) (direct evidence includes "proof of an admission that gender was the reason for an action").[2]

---

[2]The police superiors contend that reassignment to the night watch is not an adverse employment action. The district court found that "there is a question of

When the state makes a classification based on gender, "the reviewing court must determine whether the proffered justification is exceedingly persuasive." *See Tipler,* 482 F.3d at 1028, *quoting Virginia,* 518 U.S. at 533. "For a gender-based classification to withstand equal protection scrutiny, it must be established at least that the [challenged] classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Nguyen v. INS,* 533 U.S. 53, 60 (2001) (internal quotations omitted).

In this case, Captain Filla's intra-department report identifies two governmental objectives. First, she believed it was "important that all watches in every command be as diverse as the population we serve." Second, Filla aimed "to consider the safety of all personnel on the street when assigning our officers to crucial positions; for example, the searching of suspects at incident scenes." The record here does not demonstrate the importance of these objectives. Other than Captain Filla's report, there is little evidence of the importance of assigning females to night watches. There was no city-wide policy or procedure to assign females to night watches. When Chief Mokwa was asked if he promulgated any order requiring a certain number of females be assigned to any given shift, he stated: "No. Because I haven't seen any analysis that would require me to do that." Chief Mokwa stated that during his four years as chief, no other supervisor had recommended "that females should be assigned to various watches." Chief Mokwa acknowledged that he did not think "that necessarily every Captain would agree with [Filla]," and stated "I don't know" whether he would agree with her decision. Major Joachimstaler said that he "would never submit a memo or written document saying we should gender base or race base any personnel

---

material fact as to whether a reasonable employee would view Filla's decision to place Plaintiffs on the night watch permanently to be a materially adverse action." In this qualified-immunity appeal, this court will not review a factual controversy. *See Thomas,* 251 F.3d at 746. *See generally Phillips v. Collings,* 256 F.3d 843, 848 (8th Cir. 2001) ("we need not determine for purposes of this appeal whether discrimination claims premised on 42 U.S.C. § 1983 require a showing of an adverse employment action").

decisions, because you shouldn't do it that way." On the facts of this case, the police superiors did not show the governmental objectives were important.[3] Therefore, the proffered justifications are not exceedingly persuasive.

B.

The next step in the qualified immunity analysis "is to ask whether the right was clearly established . . . in light of the specific context of the case." *See Saucier v. Katz,* 533 U.S. 194, 201 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. Reasonable mistakes "can be made as to the legal constraints on particular police conduct. . . . If the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." *McClendon v. Story County Sheriff's Office,* 403 F.3d 510, 515 (8th Cir. 2005), *quoting Saucier,* 533 U.S. at 202.

Plaintiffs repeatedly emphasize that Chief Mokwa promulgated as department policy – and Captain Filla and Major Joachimstaler knew about – Special Order 2001-S-9. It says: "Management actions such as hiring and firing, promotion or failure to promote, demotion, reassignment or transfer . . . will not discriminatorily be based on race, color, religion, sex, national origin, age or disability."

Special Order 2001-S-9, however, is general and abstract. The qualifier "discriminatorily" anticipates that some decisions based on sex will not be discriminatory. Other Special Orders give instances of decisions based on sex that might not be discriminatory. For example, Special Order 92-S-2 says, "It is preferable for suspects and prisoners to be searched by an officer of the same sex." Special

---

[3]The police superiors' repeated argument that "there is no evidence that Captain Filla . . . harbors animosity toward other women" is irrelevant to the importance of the governmental objectives in this case.

Order 94-S-7 states, "A female prisoner shall be searched only by a female officer." That Order further provides, "Female adult prisoners shall only be transported with other female adult prisoners. Juvenile prisoners shall only be transported with other juvenile prisoners of the same sex." Special Order 86-S-4 says, "All persons who are to be confined . . . shall be subject to a thorough custodial search conducted by a person of the same sex as the person being searched whenever reasonably possible." For body cavity searches: "The search must be conducted in the presence of an officer of the same sex as the person to be searched." Strip searches are to be conducted by "an officer and in the presence of officers of the same sex as the person to be searched." In sum, these Special Orders do not address the specific context of shift-reassignments based on gender.

In the specific context of this case, the superiors were confronted with the situation where no female officers were working the night watch in District One. Captain Filla thought that Special Order 90-S-7 granted her authority to reassign Plaintiffs, as long as she had a "sufficient justification." Major Joachimstaler believed that having some females on the night watch was the "optimum for the optimum operation of the district." Chief Mokwa testified that Captain Filla had "the authority to make those decisions for her command." Captain Filla testified that female domestic violence victims should be interviewed by female officers, and she was concerned about the safety of all personnel and the searching of female suspects at incident scenes.

Reasonable police administrators could believe that assigning female officers to the night watch was lawful. *See Pace v. City of Des Moines,* 201 F.3d 1050, 1052 (8th Cir. 2000), *citing Anderson v. Creighton,* 483 U.S. 635, 641 (1987) ("Qualified immunity shields Officer Danner from suit if a reasonable officer could have believed his actions to be lawful, in light of clearly established law and the information that he possessed"). This reasonable belief about assigning female officers includes a reasonable belief by Chief Mokwa that Captain Filla (and other officers) did not need further training or supervision.

In a similar context, this court has approved reassignments based on gender. Female correctional officers may be transferred to a particular shift because of gender (based on an exceedingly persuasive justification). *See **Tipler v. Douglas County, Neb.,*** 482 F.3d 1023, 1028 (8th Cir. 2007) (equal protection not violated when jail showed important governmental objectives "to implement state law, the jail standards, the union agreement, and proper prison administration;" and the jail "employed means that were substantially related" to achieving the objectives), *citing **Tharp v. Iowa Dep't of Corrs.,*** 68 F.3d 223, 226 (8th Cir. 1995), *cert. denied*, 517 U.S. 1135 (1996) (gender-based policy was reasonable when it was a minimal restriction on employment and "addresses female inmate privacy concerns, improves the Facility's rehabilitative services to female inmates, and advances the interests of female employees"). *Cf. **Timm v. Gunter,*** 917 F.2d 1093, 1102 n.3 (8th Cir. 1990) (a "staffing restriction does not violate Title VII" because "a minimal restriction such as the Unit 5 gender-based staffing restriction does not deprive female employees of any employment opportunities"). The present case is unlike *Goodwin v. Circuit Court of St. Louis County*, 729 F.2d 541 (8th Cir. 1984), where the female hearing officer was transferred after the unreasonable defendant said, "This court will never run well so long as there are women in charge," and "This Court won't run smoothly until we get rid of these g_ _d_ _ _ women." *Id*. at 544.

Here, although the plaintiffs were impermissibly reassigned without an exceedingly persuasive justification, the decision – although mistaken – was reasonable. "The issue is not whether the defendant acted wrongly, but whether reasonable persons would know they acted in a manner which deprived another of a known constitutional right." ***Herts v. Smith,*** 345 F.3d 581, 585 (8th Cir. 2003), *quoting **Sparr v. Ward,*** 306 F.3d 589, 593 (8th Cir. 2002). Based on the defendants' reasonable judgments, qualified immunity should have been granted.

-10-

## IV.

The police superiors were entitled to qualified immunity on counts IV and V, the 42 U.S.C. § 1983 claims. Appellees' motion for sanctions is denied. The judgment of the district court is reversed in part, and the case remanded.

_____