# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3379

_____

| | |
|---|---|
| Julianna Vaughn, | * |
| | * |
| Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Western District of Missouri. |
| Rick Wallace; Dena Driver, | * |
| also known as Dena Tolson, | * |
| | * |
| Appellees. | * |

_____

Submitted: March 14, 2007
Filed: August 7, 2007

_____

Before RILEY, BOWMAN, and ARNOLD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Three-year-old Robert Hughes III and his seven-year-old cousin Damian died tragically in a fire in the foster home where the Missouri Division of Family Services (DFS)[1] had placed them. Robert's mother, Julianna Vaughn, then brought an action against his foster mother, Patricia Boston, and several DFS employees for violations of Robert's right to substantive due process and failure to train under 42 U.S.C.

_____

[1]DFS was the division of the Missouri Department of Social Services that is now known as the Family Support and Children's Division. *See* Mo. Rev. Stat. ch. 207.

§ 1983, and for wrongful death under Mo. Rev. Stat. § 537.080. After the district court[2] granted summary judgment to the DFS defendants, Ms. Vaughn dismissed her claims against Ms. Boston and appealed the court's judgment in favor of two of the DFS employees, child care worker Rick Wallace and his supervisor, Dena Driver. We affirm.

I.

We state the evidence favorably to Ms. Vaughn. *See Tipler v. Douglas County, Neb.*, 482 F.3d 1023, 1025 (8th Cir. 2007). When Robert was two years old, DFS placed him in a "possible adoptive home" with Ms. Boston, a licensed foster parent, who intended to adopt both Robert and Damian; Mr. Wallace was the boys' child care worker. Although Ms. Boston notified the defendants when she and the children moved to a different location about a year later, they did not visit her new home. Not long after the move, Lisa Wegman – an employee of a company that re-licenced foster homes and trained foster and potential adoptive parents for the state's social services department– inspected Ms. Boston's home and completed a review form. In response to a question on the form asking whether "[a]ll flammable liquids, matches, cleaning supplies, poisonous materials, medicines, and alcohol [were] inaccessible to children," Ms. Wegman marked neither "yes" nor "no" but simply wrote in the "remarks" section, "will put up – watch closely"; she did not name any particular dangerous substance that was accessible to children. Both Ms. Wegman and Ms. Boston signed the completed form. No one visited the home again on behalf of DFS. Robert died in the fire two months after Ms. Wegman's visit.

At the time of the fire, nine people lived in Ms. Boston's home: Ms. Boston; her seventeen-year-old daughter, Crystal; Ms. Boston's fiancée, Bernard Davis; Mr. Davis's fifteen-year-old son; and Ms. Boston's five foster children – Robert,

[2]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

-2-

Damian, an infant, a three-year-old girl, and a thirteen-year-old girl. Crystal said that she was awakened on the morning of the fire by a smoke alarm; she helped the infant and the three-year-old girl out of the house and notified the fire department. The teenage foster child said that she heard the smoke alarm, went to the kitchen where she saw smoke, and then returned to the bedroom that she shared with Crystal to tell her about it. Robert and Damian slept in a back room on the other side of the kitchen. Ms. Boston, who worked nights, had not yet arrived home, and Mr. Davis had left for work.

When firefighters entered the home, they found Robert and Damian unconscious in their bedroom, took them out of the house, and turned them over to medical personnel who had arrived on the scene. Firefighters then entered the room near the boys' bedroom that Ms. Boston called the mudroom, where they discovered an ironing board with a burning pattern on it that had been caused by igniting a flammable liquid. Fire investigators ultimately concluded that the fire was an arson and had been started in the mudroom by some type of accelerant. Ms. Boston stated that charcoal lighter fluid and charcoal were kept in that room. Neither the fire department nor law enforcement identified a perpetrator and no criminal charges were filed.

Investigators questioned the adults and teenagers who had been living in the home and checked into their backgrounds. They noted that the thirteen-year-old foster child who first discovered the fire had been placed with Ms. Boston only three days earlier. Before the fire, Mr. Davis, who was not licensed as a foster parent, had not responded to Ms. Wegman's requests that he give her permission to check into his background. Mr. Davis did provide that permission after the fire, and the Missouri Highway Patrol obtained his criminal record, which showed that he had been convicted of second degree assault ten years earlier. The documents filed in the district court contain one reference that appears to connect Mr. Davis with an arson that occurred more than two decades earlier: an unsigned handwritten note written

after Robert's death and discussing Mr. Davis's background includes the entry, "arson–72-75."

## II.

We review the district court's grant of summary judgment *de novo*. *Sallis v. University of Minn.*, 408 F.3d 470, 474 (8th Cir. 2005). The party requesting summary judgment is "entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c), if the non-movant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Sallis*, 408 F.3d at 474. In determining whether the non-movant created a material question of fact, we consider only evidence that would be admissible at trial. *Id.*

We do not believe that Ms. Vaughn created a genuine issue of material fact on the issue of causation, a matter that she had the burden of proving as to all of her claims. Ms. Vaughn's substantive due process claims are based on the contention that the defendants deprived Robert of his life by engaging in conscience-shocking conduct, *see United States v. Salerno*, 481 U.S. 739, 746 (1987), and by failing to train Ms. Boston. And her wrongful death claim of course required proof that the defendants caused Robert's death. *See Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 860-61 (Mo. 1993). As Ms. Vaughn's counsel acknowledged at oral argument, the record does not show who started the fire or how he or she did it. Though the fact that no one was named as the perpetrator or charged with a crime does not by itself mean that Ms. Vaughn has not shown causation, she cannot base her claims on speculation.

Ms. Vaughn makes several arguments in an attempt to connect the defendants' actions or inaction to Robert's death, but we conclude that all of them lack evidentiary support. In general, Ms. Vaughn argues in her brief that the defendants were required

-4-

to abate several "dangerous condition[s]" in Ms. Boston's home that led to Robert's death.

Ms. Vaughn first maintains that the state defendants caused Robert's death by allowing too many children to live in Ms. Boston's home. Even if the home were overcrowded, a matter that we do not decide, we think that that fact is simply too unconnected to Robert's death to amount to proof of what caused it: There is no proof that Robert would not have died if fewer people had been living in the house.

We also see no merit to Ms. Vaughn's contention that Robert's death resulted from the defendants' failure to investigate Mr. Davis's background and to remove him from the home based on his criminal history. We do not believe, first of all, that Ms. Vaughn can rely on the vague reference in the record to arson because we do not think that it would be admissible at trial. But even if it were, the record simply could not support a finding by a preponderance of the evidence that Mr. Davis had anything to do with the fire.

Ms. Vaughn also contends that the fire started because no one from DFS visited the home after Ms. Wegman reported that one or more hazardous substances were accessible to the children. But contrary to Ms. Vaughn's assertion, Ms. Wegman's report does not say that flammable materials were accessible to the children, and the record does not reveal that Ms. Wegman discovered any particular substance during her visit to the home. Nor is there anything in the record tending to show where Ms. Wegman found the substance or substances that were the subject of her note. As we have said, the form that she completed listed materials such as cleaning supplies, medicines, and alcohol, as well as flammable liquids, and her remarks indicated only that at least one of the listed items was accessible to the children. Ms. Vaughn did not offer other evidence that would clarify Ms. Wegman's report or would show that conditions remained the same during the two-month interval between Ms. Wegman's visit to the home and the fire. Nor is there any evidence from which one can deduce

what accelerant was used to start the fire, whether Ms. Wegman saw it, or whether it would have been discovered during a follow-up visit. But most importantly, we think, the evidence simply does not support a finding by reasonable jurors that the fire occurred because a dangerous substance was accessible to children. Finally, without addressing the question of whether Ms. Vaughn stated a claim under § 1983 for failure to train, we conclude that she offered no evidence to show how any such failure resulted in Robert's death.

Having carefully reviewed the record, we conclude that Ms. Vaughn did not offer evidence from which reasonable jurors could conclude by a preponderance of the evidence that anything that Mr. Wallace or Ms. Driver did or did not do caused Robert's tragic death. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 252; Fed. R. Civ. P. 56(c). We therefore affirm the judgment of the district court.

_____